Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| MYRNA MABEL ECHEGARAY DEL VALLE<br><br>Apelante<br><br>V.<br><br>EAGLE INDUSTRIES DEL CARIBE, INC.<br><br>Apelado | KLAN202301165 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Lares<br><br>Caso Núm.: UT2020CV00201<br><br>Sobre: Despido Injustificado (Ley Núm. 80 de 30 de mayo de 1976) Despido por Razón de Discrimen (Ley Núm. 100 de 30 de junio de 1959) |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 15 de marzo de 2024.

El 29 de diciembre de 2023, compareció ante este Tribunal de Apelaciones la señora Myrna Mabel Echegaray del Valle (en adelante, señora Echegaray del Valle o parte apelante), mediante *Apelación.* Por medio de esta, nos solicita que, revisemos la *Sentencia* emitida y notificada el 30 de noviembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Lares. En virtud del aludido dictamen, el foro *a quo* desestimó por la vía sumaria la *Querella* instada por la parte apelante.

Por los fundamentos que adelante se esbozan, se confirma el dictamen apelado.

**I**

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Querella* presentada por la señora Echegaray del Valle el 26 de agosto de 2020, en contra de Eagle Industries del Caribe Inc. (en adelante, parte apelada o Eagle Industries) por

alegado despido injustificado al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada. De las alegaciones esbozadas en la *Querella* se desprende que, la parte apelante se desempeñó como auditora de calidad empleada por tiempo indeterminado en Eagle Industries hasta el 16 de julio de 2020. La parte apelante alegó que, Eagle Industries la despidió sin tener causa justificada para ello, en violación a la Ley Núm. 80 de 30 de mayo de 1976, *infra*. Añadió que, luego de ser despedida fue sustituida por un empleado masculino de menor edad, y que ello constituía discrimen por razón de edad y por ende, una violación a la Ley 100 de 30 de junio de 1959. Finalmente, la parte apelante reclamó una partida de $1,430.00 por salarios dejados de percibir y una partida de $20,000.00 por daños y angustias mentales.

En respuesta, la parte apelada presentó la *Contestación a Querella*. La parte apelada sostuvo que, la señora Echegaray del Valle fue su empleada desde el 14 de noviembre de 2005 hasta el 16 de julio de 2020, fecha en la que había sido despedida por justa causa y de conformidad con las disposiciones de la Ley Núm. 80, *infra*. De igual manera, alegó afirmativamente que, la señora Echegaray del Valle no había sido sustituida por un empleado de menor edad que ella, sino que, sus funciones habían sido distribuidas entre otras personas que ocupaban el mismo puesto. Añadió, además, que, la parte apelante fue despedida debido a que esta incurrió "en graves violaciones a las normas y los procedimientos de Eagle al incurrir en acciones deshonestas y haberse aprovechado de su puesto como Auditora para asistir y ayudar a una compañera de trabajo a intentar hurtar y/o remover sin autorización propiedad de Eagle del lugar de trabajo". Sostuvo que, previo al despido de la señora Echegaray del Valle y de conformidad con el proceso de disciplina progresiva, esta había sido amonestada en múltiples ocasiones y le fueron brindadas varias

oportunidades con el propósito de que mejorara su desempeño. Consecuentemente, le solicitó al foro *a quo* que declarara No Ha Lugar la *Querella* y desestimara el pleito.

Posteriormente, la parte apelada presentó la *Moción de Sentencia Sumaria Solicitando la Desestimación del Pleito en su Totalidad.* En su moción, Eagle Industries propuso noventa y nueve (99) hechos que, a su juicio, no se encontraban en controversia. Arguyó que, la parte apelante no tenía causa de acción alguna contra Eagle Industries al amparo de la Ley Núm. 80, *infra*, debido a que había sido despedida por justa causa.

Así las cosas, la parte apelante presentó la *Moción en Oposición a Sentencia Sumaria.* Mediante su moción, alegó que existían múltiples hechos en controversia y que, por ello, no procedía que se dictara sentencia sumaria.

Subsiguientemente, la parte apelada presentó la *Réplica a la Oposición de la Parte Demandante a la Solicitud de Sentencia Sumaria Presentada por Eagle.* Por medio de esta, la parte apelada sostuvo que, no existían hechos en controversia conforme a su *Solicitud de Sentencia Sumaria.* Reiteró que, no existía controversia en cuanto a que la señora Echegaray del Valle había sido despedida por justa causa.

Finalmente, el foro de primera instancia emitió la *Sentencia* cuya revisión nos ocupa. En esta, emitió las siguientes determinaciones de hechos:

1. El 14 de noviembre de 2005 la Parte Querellante comenzó a trabajar como empleada para la Parte Querellada.

2. Al momento de su despido la Parte Querellante ocupaba el puesto de Auditora de Calidad.

3. La Parte Querellante devengaba un salario de $5.15 por hora.

4. La Parte Querellante era responsable de cumplir todas las reglas de conducta, políticas y el Manual del Empleado y con el horario de trabajo asignado.

5. La Parte Querellante admitió estar consciente de que, al firmar el contrato de empleo, había acordado que podía ser despedida si violaba las normas de conducta y el Manual del Empleado[.]

6. La Parte Querellante recibió copia de las Reglas de Conducta y del Código de Conducta y Ética Comercial de la Parte Querellada, así como también el Manual del Empleado y sus revisiones y versiones posteriores.

7. La Parte Querellante admitió que una de sus obligaciones y deberes como empleada era el cumplimiento con las políticas y los procedimientos establecidos en el Manual del Empleado.

8. La Parte Querellante admitió que una de sus obligaciones y deberes como empleada era notificarle a la Parte Querellada si se percataba que alguna persona empleada estuviera cometiendo un acto contrario a las políticas y los procedimientos del patrono y que[,] si ella no lo informaba, podía ser objeto de una acción disciplinaria.

9. La Parte Querellante admitió conocer que la norma 1.1 del Capítulo 1 del Manual del Empleado establecía que las personas empleadas no podían entrar a su área de trabajo ni trabajar fuera de su turno sin la autorización previa de su Supervisor.

10. La Parte Querellante admitió estar consciente de que el Manual del Empleado les prohibía a las personas empleadas el manejo del equipo de la Parte Querellada para su uso personal o dedicarse a asuntos personales durante sus horas de trabajo.

11. La Parte Querellante sabía que las personas empleadas no podían trabajar ni operar la maquinaria fuera de su horario de trabajo regular, excepto que mediase autorización del Supervisor.

12. El párrafo número 1 de las Reglas de Conducta en el Capítulo 16.1 del Manual del Empleado prohibía el hurto de la propiedad perteneciente a la Parte Querellada o su remoción sin autorización previa.

13. El párrafo número 2 de las Reglas de Conducta en el Capítulo 16.1 del Manual del Empleado prohibía retirar propiedad de la compañía o de una persona empleada e incurrir en acciones deshonestas con respecto a dicha propiedad.

14. El párrafo número 29 de las Reglas de Conducta en el Capítulo 16.1 del Manual del Empleado prohibía realizar trabajos personales en tiempo pagado por el patrono.

15. El párrafo número 30 de las Reglas de Conducta en el Capítulo 16.1 del Manual del Empleado prohibía utilizar cualquier equipo y propiedad de la Parte Querellada para fines personales.

16. El párrafo número 34 de las Reglas de Conducta en el Capítulo 16.1 del Manual del Empleado prohibía que las personas empleadas permanecieran en el área de trabajo después de terminar su turno de trabajo o en sus días libres.

17. El Manual del Empleado contenía una política de seguridad que le reservaba a la Parte Querellada el derecho de revisar las carteras, los bultos y las pertenencias de las personas empleadas a la entrada y salida de su lugar de trabajo.

18. La Parte Querellante admitió saber que la Parte Querellada había instalado cámaras de seguridad en el lugar de trabajo, que había letreros que indicaban sobre las cámaras de seguridad y que dichas cámaras de seguridad se podían ver.

19. El capítulo 23 del Manual del Empleado contiene la Política de Vigilancia Electrónica.

20. La Parte Querellante acusó recibo de su descripción de tareas como Auditora de Calidad.

21. Las funciones esenciales de la Parte Querellante como Auditora de Calidad incluían lo siguiente: (i) inspeccionar las labores en la línea de producción; (ii) inspeccionar el proceso y el producto final; (iii) auditar los productos manufacturados para asegurar que cumpliesen con las especificaciones del cliente; (iv) detectar las deficiencias de calidad y tomar medidas correctivas; (v) preparar el informe de auditoría y proveer recomendaciones para acciones correctivas; (vi) comparar los resultados de las pruebas con las especificaciones para validar la calidad del producto; (vii) coordinar con los equipos de producción para evitar inconsistencias y desperdicio; (viii) asegurar el cumplimiento con las políticas, procedimientos e instrucciones de trabajo; y (ix) cumplir con las normas y procedimientos de seguridad al igual que con las políticas de la Parte Querellada.

22. La Parte Querellante admitió conocer que las personas empleadas no podían usar las maquinarias, equipo, materiales y propiedad del patrono para fines personales.

23. La Parte Querellante admitió que conocía que las personas empleadas no se podían llevar la propiedad de la Parte Querellada sin autorización [...] previa para ello.

24. La Parte Querellante admitió que la persona empleada que quisiera utilizar tela que fuese propiedad de la Parte Querellada tenía que pedir permiso al supervisor o al gerente o a Recursos Humanos y llenar un documento titulado "Hoja de Registro y Control para Mover Propiedad".

25. El 15 de julio de 2020, Mariceli Rodríguez Soler, compañera de trabajo de la Parte Querellante, hizo un bulto con tela de tipo camuflaje perteneciente a la Parte Querellada, la cual ya estaba cortada a las medidas y las dimensiones específicas y utilizó además otros dos pedazos de tela que ya estaban debidamente cortadas para hacer los mangos del bulto y un "zipper".

26. La Parte Querellante admitió que el 15 de julio de 2020, Mariceli Rodríguez Soler confeccionó un bultito para ella misma con material y tela que sacó del "boogie" perteneciente a la Parte Querellada.

27. La Parte Querellante admitió que no le preguntó al supervisor o a alguien que estuviese a cargo en el área, en ese módulo, para qué era el "boogie" del cual su compañera sacó los materiales e hizo su bultito.

28. La Parte Querellante tampoco investigó de dónde provenía ese "boogie" ni revisó el "boogie" para ver qué materiales había adentro.

29. Mariceli Rodríguez Soler admitió que tenía que pedir permiso a su Supervisor para poder tomar la tela y utilizar dicha propiedad perteneciente a la Parte Querellada.

30. Mariceli Rodríguez Soler sabía que debía […] pedir autorización y llenar un documento titulado "Hoja de Registro y Control para Mover Propiedad" para poder utilizar la tela y cualquier producto de la Parte Querellada.

31. Mariceli Rodríguez Soler no pidió autorización a la gerente ni a ningún supervisor ni llenó el documento requerido para poder utilizar la tela y los materiales con los cuales confeccionó su bulto.

32. El 15 de julio de 2020 Mariceli Rodríguez Soler le enseñó a la Parte Querellante el bulto que había confeccionado y le pidió que le ayudara a enrollar y guardar el bulto.

33. La Parte Querellante le entregó un rollo de cinta adhesiva a Mariceli Rodríguez Soler y estuvo presente cuando esta dobló y enrolló el bulto y lo puso dentro de una bolsa plástica negra sellada con cinta adhesiva.

34. La Parte Querellante estuvo presente y vio cuando Mariceli Rodríguez Soler sacó todas sus pertenencias de su cartera que era amarillo transparente, introdujo la bolsa plástica negra, volvió a guardar sus pertenencias en el interior de su cartera y se la mostró a la Parte Querellante.

35. La Parte Querellante admitió que no le dijo a Mariceli Rodríguez Soler que no guardara el bulto en su cartera ni le preguntó si había pedido permiso o si había llenado el papel para obtener la autorización para utilizar esa tela.

36. El 15 de julio de 2020, a las 2:00 pm, la Sra. Arroyo recibió una confidencia del mecánico Richard Lisboa en relación con el incidente del intento de hurto.

37. La Sra. Arroyo solicitó al Administrador de IT, el Sr. Restituto Dumeng, que verificara las imágenes captadas por la cámara de seguridad para confirmar los hechos relacionados con el incidente.

38. En dicho video, se observó a Mariceli Rodríguez Soler sacando los artículos que tenía en su cartera plástica amarilla transparente, colocando dicha bolsa plástica negra al fondo de su cartera y volviendo a introducir en su cartera los artículos que había sacado en presencia de la parte querellante.

39. En esa tarde del 15 de julio de 2020, la gerencia incluyendo a Darnetha Elmore, Directora de Recursos Humanos decidió que las señoras Arroyo y Sonia González, Asistente de Operaciones se reunieran con Mariceli Rodríguez Soler para investigar los hechos.

40. El 15 de julio de 2020 a las 3:00 pm, la Sra. Arroyo fue al área de trabajo de Mariceli Rodríguez Soler y le pidió que recogiera sus pertenencias y se reunió con ella y con Sonia González ("Sonia").

41. En esa reunión Mariceli Rodríguez Soler tomó su cartera frente a Sonia y Arroyo, sacó una bolsa plástica negra sellada con cinta adhesiva de su cartera, desenvolvió dicha bolsa y entregó el bulto; también le entregó su tarjeta de identificación y luego se fue de la oficina.

42. Al día siguiente, el 16 de julio de 2020, Arroyo, Vázquez y Pedro Ríos, Líder de Auditoría, se reunieron con la Parte Querellante y esta aceptó los hechos del incidente.

43. Como consecuencia de dicho incidente, la Parte Querellada despidió a la Parte Querellante y también a Mariceli Rodríguez Soler, cuya fecha de

sus respectivos despidos se hizo efectiva el 16 de julio de 2020.

44. La Parte Querellante admitió que la Parte Querellada le cursó siete acciones disciplinarias en el transcurso de su empleo.

45. El 17 de septiembre de 2007 la Parte Querellante recibió una acción disciplinaria titulada "Primera Advertencia" por violación a las políticas a las reglas generales de seguridad de la Parte Querellada.

46. El 4 de marzo de 2008 la Parte Querellante fue suspendida de empleo por 5 días tras haber violado las políticas de la Parte Querellada al insubordinarse, burlarse y faltarle el respeto a su supervisor.

47. El 5 de enero de 2010 la Parte Querellante fue objeto de una acción disciplinaria por violar las políticas de la Parte Querellada que le requerían registrar su horario de trabajo en el reloj ponchador.

48. El 28 de febrero de 2013 la Parte Querellante fue objeto de una acción disciplinaria por violar las políticas y normas de conducta de la Parte Querellada al comenzar sus labores 30 minutos después de haber registrado su ponche de entrada, ello pues [se] encontraba fuera de su área de trabajo, hablando excesivamente, tomando café en hora de trabajo y llevando a cabo actividades no relacionadas con su trabajo.

49. El 28 de marzo de 2013 la Parte Querellante fue objeto de una acción disciplinaria por violar las políticas de la Parte Querellada sobre asistencia al haber incurrido en un patrón de ausentismo y tardanzas.

50. El 6 de abril de 2015 la Parte Querellante fue objeto de una acción disciplinaria por violar las políticas de calidad y el código de conducta de la Parte Querellada al haber incurrido en desempeño deficiente y negligencia al realizar sus funciones, lo cual ocasionó que el cliente (Blackhawk) rechazara el producto que la Parte Querellante había inspeccionado/auditado.

51. El 27 de agosto de 2018 la Parte Querellante […] fue objeto de una acción disciplinaria por violar las políticas de calidad y el código de conducta de la Parte Querellada al haber incurrido en desempeño deficiente y negligencia al realizar sus funciones, lo cual ocasionó que el cliente (Filson) rechazara el producto que la Parte Querellante había inspeccionado/auditado y que dicho producto tuviese que ser re-inspeccionado ocasionándoles

un gasto adicional de $4,432.13 a la Parte Querellada.

52. Por motivo de la última acción disciplinaria, la Parte Querellante fue advertida de que la falta de cumplimiento con las normas de la empresa conllevaría la continuación del procedimiento de disciplina progresiva hasta la terminación de su empleo.

53. A la fecha de su despido, la Parte Querellante tenía 49 años.

54. La Parte Querellante admitió que no tenía conocimiento personal de que la Parte Querellada hubiese contratado a una persona para sustituirla en el puesto.

55. La Parte Querellante admitió que su alegación de discrimen se basaba en un comentario que le hizo un compañero de trabajo llamado Edward un día que se encontró con ella en el supermercado.

56. Edward le dijo a la Parte Querellante que Giovanni estaba en su área.

57. La Parte Querellante admitió que no recordaba el apellido de Edward, en cuál área trabajaba y cuándo le hizo el comentario; tampoco tenía el número de teléfono de Edward y no lo anunció como testigo en este caso.

58. Asimismo, la Parte Querellante admitió que Giovanni Irizarry ya ocupaba el puesto de Auditor de Calidad desde antes que a ella la despidieran.

59. Luego del despido de la Parte Querellante, no se contrató a ninguna persona empleada para que la sustituyera en su puesto, sino que sus funciones se distribuyeron entre el resto de las personas que ocupaban el mismo puesto que ella como Auditora de Calidad.

60. Específicamente, las tareas de la Parte Querellante se distribuyeron entre las siguientes personas que ya ocupaban la posición de Auditora de Calidad: Brenda E. Vélez Maldonado, [V]erónica Acevedo González, Ivette Román Carrero y Carmen M. Arce Dom[e]nech.

61. La señora Brenda E. Vélez Maldonado ocupaba el puesto de Auditora de Calidad, comenzó a trabajar para la Parte Querellada el 13 de septiembre de 2005 y nació el 19 de julio de 1969.

62. A la fecha del despido de la Parte Querellante, el 16 de julio de 2020, Vélez tenía más de 50 años.

63. La señora Verónica Acevedo González ocupaba el puesto de Auditora de Calidad, comenzó a trabajar para la Parte Querellada el 12 de junio de 2007 y nació el 29 de junio de 1973.

64. A la fecha del despido de la Parte Querellante, el 16 de julio de 2020, Acevedo tenía más de 47 años.

65. La señora Ivette Román Carrero ocupaba el puesto de Auditora de Calidad, comenzó a trabajar para la Parte Querellada el 16 de enero de 2007 y nació el 5 de marzo de 1964.

66. A la fecha del despido de la Parte Querellante, el 16 de julio de 2020, Román tenía más de 56 años.

67. La señora Carmen M. Arce Domenech ocupaba el puesto de Auditora de Calidad, comenzó a trabajar para la Parte Querellada el 1 de marzo de 2018 y nació el 30 de junio de 1960.

68. A la fecha del despido de la Parte Querellante, el 16 de julio de 2020, Arce tenía más de 60 años.

69. La Parte Querellada no tomó en consideración la edad de la Parte Querellante al momento de su despido.

70. De las 16 personas que ocupaban el mismo puesto de Auditora de Calidad que ocupaba la Parte Querellante, el 68.75% (entiéndase: 11 personas) cuentan con más de 46 años.

71. La Parte Querellada no tomó en consideración el sexo de la Parte Querellante al momento de su despido.

72. De las 16 personas que ocupaban el mismo puesto de Auditora de Calidad que ocupaba [la] Parte Querellante, el 75% (entiéndase: 12 personas) son mujeres.

73. Tras solicitar oportunamente ante el Departamento del Trabajo y Recursos Humanos, se le concedieron los beneficios por desempleo.

74. En dicha solicitud indicó que la Parte Querellada fue su patrono anterior y que la razón por la cual terminó su relación de empleo fue debido a la pandemia de Covid-19.

Consecuentemente, la primera instancia judicial determinó que procedía dictar sentencia sumaria a favor de la parte apelada. Conforme a ello, declaró Ha Lugar la *Moción de Sentencia Sumaria*

*Solicitando la Desestimación del Pleito en su Totalidad,* y desestimó la *Querella.*

Inconforme, la parte apelante acudió ante este Foro mediante *Apelación* y realizó los siguientes señalamientos de error:

1. Erró el Honorable Tribunal de Primera Instancia al establecer como hechos incontrovertidos en el contexto de una sentencia sumaria, hechos que fueron controvertidos mediante la misma deposici[ó]n que form[ó] parte de los anejos de la moci[ó]n de sentencia sumaria.

2. Erró el Honorable Tribunal al establecer como hecho[s] incontrovertidos en el contexto de una moción de sentencia sumaria hechos que giran en torno a elementos subjetivos de intenci[ó]n.

3. Erró el Honorable Tribunal al declarar Ha Lugar una moci[ó]n de sentencia sumaria, tomando como base hechos materiales que se encontraban controvertidos y hacer determinaciones sobre intención de las partes.

El 29 de enero de 2024, la parte apelada compareció mediante *Alegato en Oposición a la Apelación.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[1] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022); *Serrano Picón v. Multinational Life Ins.*, 2023 TSPR 118, 212 DPR ___ (2023); *González Meléndez v. Mun. San Juan,* 2023 TSPR 95, 212 DPR ___ (2023); *Birriel Colón v. Econo y Otros,* 2023 TSPR 120, 213 DPR ___ (2023) *Delgado Adorno v. Foot Locker Retail,* 208 DPR 622 (2022). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA

---

[1] *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 808 (2020).

Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015); *Rosado Reyes v. Global Healthcare*, supra, pág. 808.

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[2] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022); *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 5; *Rosado Reyes v. Global Healthcare,* supra, pág. 808; *González Meléndez v. Mun. San Juan*, supra. Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 6; *Birriel Colón v. Econo y Otros*, supra; *González Meléndez v. Mun. San Juan*, supra.[3] De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra.

Cónsono con esto, en el pasado, el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el

---

[2] *Velázquez Ortiz v. Gobierno Mun. De Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018).
[3] Véase *Lugo Montalvo v. Sol Meliá Vacation*, supra, pág. 225; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN,* supra, pág. 14.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot,* supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia

sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3(e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra.

Cónsono con lo antes indicado, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otros*, supra; *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010). Las meras afirmaciones no bastan. *Íd*. "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos. que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15. También, deberá enumerar los hechos que no estén

en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan*, supra. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd. Serrano Picón v. Multinational Life Ins.*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

**B. Ley Núm. 80 de 30 de mayo de 1976**

La Ley Núm. 80 de 30 de mayo de 1976, conocida como la Ley de Indemnización por Despido sin Justa Causa[4], (Ley Núm. 80), 29 LPRA sec. 185a *et seq.*, según enmendada, regula las acciones

---

[4] Destacamos que la Ley Núm. 80 fue enmendada por la Ley Núm. 4 de 2017, conocida como Ley de Transformación y Flexibilidad Laboral, aprobada el 26 de enero de 2017.

relacionadas con el despido de un empleado. Tiene el propósito de proteger al empleado de actuaciones arbitrarias del patrono e imponer remedios económicos que desalienten la práctica de despedir a los empleados injustificadamente. *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Romero et als. v. Cabrera Roig et als.*, 191 DPR 643, 649-650 (2014); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 929 (2015); *González Santiago v. Baxter Health Care*, 202 DPR 281 (2019); *Segarra Rivera v. Int'l Shipping Agency, Inc.,* supra, pág. 7.

En consonancia con su propósito, dicha pieza legislativa establece que "aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) están contratados sin tiempo determinado; (2) reciben una remuneración, y (3) son despedidos de su cargo, sin que haya mediado una justa causa", tienen derecho al pago de una compensación por su patrono (además del sueldo devengado), típicamente denominada como la mesada. *Orsini v. Srio de Hacienda*, 177 DPR 596, 620-621 (2009); *Rodríguez Gómez v. Multinational Ins.,* 207 DPR 540 (2021); *Indulac v. Unión*, 207 DPR 279(2021).

No obstante, es meritorio destacar que, según se ha establecido doctrinalmente, "en Puerto Rico no existe una prohibición absoluta contra el despido de un empleado. Si existe justa causa, éste puede ser despedido". *Santiago v. Kodak Caribbean, Ltd.,* 129 DPR 763, 775 (1992); *Segarra Rivera v. Int'l Shipping Agency, Inc.,* supra, pág. 7; *Rodríguez Gómez v. Multinational Ins.,* supra, pág. 549; *Ortiz Ortiz v. Medtronic,* supra, pág. 771. Por ende, la Ley 80, *supra,* no proscribe la acción del despido, sino que le impone al patrono un elemento disuasivo para no despedir al trabajador sin justa causa. *Íd.*; Véase, Luis H. Sánchez Caso, *Reflexiones sobre la Responsabilidad Civil de los Oficiales y Gerenciales en Reclamaciones de Despido o Discrimen*, 34

Rev. Jur. UIPR 183, 210-11 (2000). De no existir justa causa, el remedio provisto es la imposición al patrono del pago de la mesada a favor del empleado. *Feliciano Martes v. Sheraton*, 182 DPR 368, 380 (2011); *Rodríguez Gómez v. Multinational Ins.,* supra, págs. 549-550; *Indulac v. Unión*, supra, pág. 298. Así, la mesada constituye el remedio exclusivo disponible para los empleados despedidos injustificadamente, siempre que no existan otras causas de acción al amparo de otras leyes que prohíban el despido y concedan otros remedios. (Citas omitidas). *Lugo Montalvo v. Sol Meliá Vacation*, supra, págs. 230-231; *Ortiz Ortiz v. Medtronic*, supra, pág. 771.

De otra parte, destacamos que una vez un empleado insta una causa de acción contra su patrono al amparo de la Ley Núm. 80, *supra*, el patrono podrá plantear la defensa de justa causa, a base de los criterios dispuestos en la Ley Núm. 80, *supra*, en su Art. 2. *González Santiago v. Baxter Health Care*, supra, pág. 291.

Asimismo, la propia Ley Núm. 80 estatuye claramente las ocasiones en las que un patrono tendrá justa causa para desvincular a un empleado del puesto. De este modo, en su Artículo 2 reconoce que:

**Artículo 2.**

Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c)   Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

[...]29 LPRA sec. 185b.

Sin embargo, esas tres instancias, al igual que las demás que se enumeran en la Ley Núm. 80, "son solo ejemplos de las posibles causas que constituyen justa causa para el despido". Esto se debe a que "el concepto justa causa es uno dinámico, que se nutre de múltiples y fluidas situaciones imposible de prever". La Ley Núm. 80 "no pretende, ni puede, considerar la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia". En otras palabras, la enumeración de escenarios que se consideran justa causa contenida en la Ley Núm. 80 no es taxativa. (Citas omitidas). *SLG Torres-Matundan v. Centro Patología*, supra, pág. 930; Véase *Ortiz Ortiz v. Medtronic*, supra, pág. 773; *Indulac v. Unión,* supra, pág. 299. Las circunstancias constitutivas de justa causa, esbozadas en el Art. 2 de la Ley Núm. 80 constituyen meros ejemplos de instancias asociadas a un despido. *Íd.*

Por esa razón, los patronos están en libertad de adoptar los reglamentos y las normas razonables que estimen necesarias para el buen funcionamiento de la empresa y en las que se definan las faltas que, por su gravedad, podrían acarrear el despido como sanción. *Jusino et als. v. Walgreens*, 155 DPR 560, 573 (2001); *González Santiago v. Baxter Health Care*, supra, págs. 291-292. Según nuestro Máximo Foro, en las situaciones en las que un patrono despide a un empleado por una causal que no se encuentre enumerada en la Ley Núm. 80, el análisis para determinar si esta constituye justa causa se apoya en el principio rector de la Ley Núm. 80, contenido en el segundo párrafo de su Art. 2, *supra,*

el cual establece lo siguiente: "No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". *SLG Torres-Matundan v. Centro Patología,* supra, pág. 931; *González Santiago v. Baxter Health Care*, supra, pág. 292. De igual forma, nuestro Máximo Foro ha destacado que, las violaciones de las normas del empleo constituirán justa causa para el despido en aquellas instancias en las que el patrono consiga demostrar: "(1) que las reglas establecidas para el funcionamiento del establecimiento son razonables[;] (2) que le suministró una copia escrita de dichas normas al empleado, y (3) que el empleado las violó en reiteradas ocasiones". *Ortiz Ortiz v. Medtronic,* supra, págs. 773-774, citando a *Jusino et als. v. Walgreens,* supra.

Con esa regla como norte, y a modo de excepción, nuestra más alta instancia judicial reconoció que la Ley Núm. 80, *supra,* no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran. *González Santiago v. Baxter Health Care*, supra, págs. 292-293 citando a Feliciano *Martes v. Sheraton*, 182 DPR 368, 383 (2011) y a *Srio. del Trabajo v. ITT*, 108 DPR 536, 543 (1979). Es decir, aunque la Ley Núm.80 "no favorece el despido como sanción a la primera falta, ello podría considerarse justificado si dicha acción u omisión, por su gravedad y potencial de agravio, pone en riesgo la seguridad, el orden o la eficiencia que constituyen el funcionamiento del negocio". *Rivera v. Pan Pepín*, 161 DPR 681, 690 (2004); *González Santiago v. Baxter Health Care*, supra, págs. 292-293.

En esos casos particulares, "la falta o acto aislado que dé lugar al despido del empleado en primera ofensa ha de ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría una

imprudencia esperar [a que se repita, para entonces proceder con el despido]. (Citas omitidas). *Íd.* citando a *Rivera v. Pan Pepín*, supra, pág. 690; *Indulac v. Unión,* supra, pág. 300.

Cabe destacar que, la Ley Núm. 80, *supra*, sufrió una serie de enmiendas por medio de la Ley Núm. 4 de 26 de enero de 2017, conocida como Ley de Transformación y Flexibilidad Laboral. Como es sabido, la Ley Núm. 80, *supra,* le imponía al patrono el peso de la prueba y el deber de rebatir la presunción de que el despido había sido injustificado, no obstante, la Ley Núm. 4-2017 "[e]liminó de la ley la frase que le imponía el peso de la prueba al patrono en los casos de [Ley Núm. 80]". *Ortiz Ortiz v. Medtronic*, supra, pág. 776 citando a E. García García, *El legado e implicaciones de la reforma laboral de 2017*, 86 Rev. Jur. UPR 1087, 1156 (2017).

En lo pertinente, el Art. 4.12 de la Ley Núm. 4 enmendó el Art. 11 de la Ley Núm. 80, *supra,* con el propósito que dispusiese lo siguiente:

> [...] En todo pleito fundado exclusivamente en las secs. 185a a 185n de este título, el tribunal celebrará una conferencia no más tarde de sesenta (60) días después de presentarse la contestación a la demanda o querella, a la cual las partes vendrán obligadas a comparecer o ser representados por una persona autorizada a tomar decisiones, incluyendo la transacción de la reclamación. Durante dicha vista se examinarán las alegaciones de las partes, se identificarán las controversias esenciales y se discutirán las posibilidades de una transacción inmediata de la reclamación. De no transigirse la reclamación, el tribunal ordenará el descubrimiento que quede pendiente y expedirá el señalamiento de fecha para celebrar la conferencia con antelación al juicio. 29 LPRA sec. 185k.

Previo a la enmienda de la Ley Núm. 80, una vez un empleado instaba una causa de acción contra su patrono al amparo de la Ley Núm. 80, *supra,* nuestro ordenamiento legal disponía que "el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con el pago de la

mesada". 29 LPRA 185k(a). *Feliciano Martes v. Sheraton*, *supra*, pág. 385.

Por otro lado, la aplicación de la Ley Núm. 4-2017 es prospectiva, su Art. 1.2 dispone que "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en las secciones de [e]sta". 2 LPRA sec. 121a; *Ortiz Ortiz v. Medtronic*, supra, pág. 776.

Finalmente, sobre el periodo disponible para instar una reclamación al palio de la Ley 80, *supra*, esta dispone lo siguiente:

**Artículo 12.**

Los derechos que concede esta Ley prescribirán por el transcurso de un (1) año a partir de la fecha efectiva del despido mismo. Las reclamaciones por despidos realizados previo a la fecha de vigencia de la "Ley de Transformación y Flexibilidad Laboral" quedarán sujetas al término de prescripción previamente en vigor. 29 LPRA sec. 185*l*

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En el ejercicio de nuestra función revisora nos corresponde: 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe

proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[5].

De un ponderado análisis del expediente ante nuestra consideración, surge que, la parte apelada, en su moción de sentencia sumaria, cumplió sustancialmente con las formalidades dispuestas por la Regla 36 de Procedimiento Civil, *supra*. Puesto que, incluyó las alegaciones de las partes, realizó una enumeración de hechos sobre los cuales entendía eran incontrovertidos, de manera detallada, separada y sustentada. Asimismo, hizo referencia a declaraciones juradas, deposiciones y otros documentos que obran en el expediente. En cuanto a la oposición, la parte apelante cumplió de manera sustancial con las formalidades dispuestas por la Regla 36 de Procedimiento Civil, *supra*, en la medida en que hizo referencia a la prueba documental que entendía que controvertían los hechos alegados por la parte contraria e indicó los párrafos y las páginas a las que hacía referencia[6].

En cumplimiento con la normativa vigente sobre la sentencia sumaria, evaluamos de *novo* las determinaciones de hechos esbozadas por el Tribunal de Primera Instancia y las acogemos por no encontrarse en controversia.

Superada esta primera etapa, nos corresponde evaluar si el foro de primera instancia actuó correctamente al dictar sentencia sumaria a favor de la parte apelada.

En su primer señalamiento de error, la parte apelante sostiene que el foro *a quo* incidió al establecer como hechos incontrovertidos algunos hechos que, a su juicio, habían sido controvertidos mediante una deposición que fue anejada a la moción de sentencia sumaria.

---

[5] *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 679.
[6] Regla 36.3(b) de Procedimiento Civil, *supra*; *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 15.

En vista de que acogimos las determinaciones de hechos esbozadas por el Tribunal de Primera Instancia, ya que, al evaluar la totalidad del expediente, determinamos que no se encontraban en controversia, se torna innecesario discutir este señalamiento de error.

Por otro, como segundo señalamiento de error, la parte apelante arguye que, erró el Tribunal de Primera Instancia al establecer como hechos incontrovertidos, hechos que giran en torno a elementos subjetivos de intención.

Finalmente, en su tercer señalamiento de error, la parte apelante sostiene que, la primera instancia judicial incidió al declarar Ha Lugar la moción de sentencia sumaria presentada por la parte apelada, y tomar como base hechos materiales que se encontraban controvertidos y al hacer determinaciones sobre la intención de las partes.

Por encontrarse intrínsecamente relacionados, discutiremos los errores antes mencionados de forma conjunta. Adelantamos que, no le asiste la razón a la parte apelante. Veamos,

De acuerdo a las determinaciones de hechos, la parte apelante se desempeñó como Auditora de Calidad en Eagle Industries desde el 2005[7]. Como empleada de Eagle Industries, la señora Echegaray del Valle era responsable de cumplir todas sus reglas de conducta, políticas y su Manual del Empleado[8]. De igual manera, era del conocimiento de la parte apelante que, al firmar el contrato acordaba ser despedida si violaba las reglas de conducta y el Manual del Empleado[9], puesto que, como parte de sus deberes y obligaciones tenía que cumplir con las políticas y procedimientos impuestos[10]. Entre las obligaciones y deberes reconocidos por la parte apelante,

---

[7] Véase determinaciones de hechos núm. 1 y núm. 2.
[8] Véase determinación de hecho núm. 4.
[9] Véase determinación núm. 5.
[10] Véase determinación núm. 7.

se encontraba el notificar a la parte apelada si se percataba que alguna persona empleada estaba cometiendo un acto contrario a las políticas y procedimientos de Eagle Industries[11]. De no cumplir con lo anterior, podía ser objeto de una acción disciplinaria[12].

Por otro lado, como parte de las Reglas de Conducta del Manual del Empleado se encontraba la prohibición de hurto de la propiedad perteneciente a Eagle Industries, o a su remoción **sin autorización previa**[13]. El aludido manual, también les prohibía a los empleados el retirar propiedad de la compañía o incurrir en acciones deshonestas con respecto a tal propiedad[14]. Al igual que les prohibía utilizar cualquier equipo y propiedad de la parte apelada para fines personales[15]. Sobre este particular, la parte apelante admitió conocer que las personas empleadas no podían utilizar las maquinarias, equipo, materiales y propiedad de la parte apelada para fines personales[16]. Asimismo, admitió conocer que las personas empleadas no podían llevarse la propiedad de la parte apelada sin autorización previa para ello[17]. Reconoció, además, que, cualquier persona empleada que deseara utilizar tela que fuese propiedad de la parte apelada, debía pedir permiso al supervisor, gerente o a Recursos Humanos y completar un documento intitulado *Hoja de Registro y Control para Mover Propiedad*[18].

Para el 15 de julio de 2020, la señora Mariceli Rodríguez Soler (en adelante, señora Rodríguez Soler), quien era compañera de la parte apelante, confeccionó un bulto con tela que pertenecía a la parte apelada, la cual se encontraba cortada a las medidas y dimensiones específicas[19]. La señora Echegaray del Valle reconoció

---

[11] Véase determinación de hecho núm. 8.
[12] Véase determinación de hecho núm. 8.
[13] Véase determinación de hecho núm. 12.
[14] Véase determinación de hecho núm. 13
[15] Véase determinación de hecho núm. 15.
[16] Véase determinación de hecho núm. 22.
[17] Véase determinación de hecho núm. 23.
[18] Véase determinación de hecho núm. 24.
[19] Véase determinación de hecho núm. 25.

que, en igual fecha, la señora Rodríguez Soler confeccionó dicho bulto para si misma con la aludida tela y con material perteneciente a la parte apelada[20]. Conforme a las determinaciones de hechos, la señora Rodríguez Soler sabía que debía solicitar autorización y llenar el documento intitulado *Hoja de Registro y Control para Mover Propiedad* para poder utilizar la tela y cualquier producto de la parte apelada[21]. A pesar de lo anterior, la señora Rodríguez Soler no solicitó autorización a la gerente ni a ningún supervisor, así como tampoco llenó el documento requerido para poder utilizar la tela y los materiales con los cuales confeccionó su bulto[22]. Subsiguientemente, la señora Rodríguez Soler le mostró a la señora Echegaray del Valle el bulto que había confeccionado y le solicitó ayuda para "enrollar y guardar el bulto"[23]. Acto seguido, la parte apelante le entregó un rollo de cinta adhesiva a la señora Rodríguez Soler y estuvo presente cuando esta última dobló, enrolló y lo colocó el bulto dentro de una bolsa plástica negra sellada con cinta adhesiva[24]. La señora Echegaray del Valle presenció y vio cuando la señora Rodríguez Soler sacó todas sus pertenencias de su cartera amarillo transparente, introdujo la bolsa plástica negra, volvió a guardar sus pertenencias en el interior de su cartera, y así se la enseñó a esta[25]. Estos hechos fueron captados mediante cámaras de seguridad[26]. La parte apelante admitió que, no le dijo a la señora Soler Rodríguez que no guardara el bulto en su cartera y que, tampoco le preguntó si había llenado el papel para obtener la autorización de uso de la tela[27]. Posteriormente, la parte apelada se reunió con la señora Rodríguez Soler, quien sacó de su cartera una

---

[20] Véase determinación de hecho núm. 26.
[21] Véase determinación de hecho núm. 30.
[22] Véase determinación de hecho núm. 31.
[23] Véase determinación de hecho núm. 32.
[24] Véase determinación de hecho núm. 33.
[25] Véase determinación de hecho núm. 34.
[26] Véase determinaciones de hecho núm. 37 y 38.
[27] Véase determinación de hecho núm. 35.

bolsa plástica negra sellada con cinta adhesiva, desenvolvió la bolsa y entregó el bulto en cuestión[28]. Para el 16 de julio de 2020, se reunieron con la señora Echegaray del Valle y esta aceptó los hechos del incidente relatado[29], por lo que fue despedida[30].

Al evaluar la prueba que emana del expediente, queda claro que, mediante sus actos, la parte apelante y la señora Rodríguez Soler procuraron que la parte apelada no se percatara de la confección del bulto con sus materiales y la extracción del mismo de sus facilidades. Ambas conocían que el Manual del Empleado hacía obligatorio el solicitar autorización para utilizar cualquier material que perteneciera a la parte apelada, y, aun así, actuaron contrario a ello. Recordemos que, nuestro Máximo Foro ha destacado que, las violaciones de las normas del empleo constituirán justa causa para el despido en aquellas instancias en las que el patrono consiga demostrar: "(1) que las reglas establecidas para el funcionamiento del establecimiento son razonables[;] (2) que le suministró una copia escrita de dichas normas al empleado, y (3) que el empleado las violó en reiteradas ocasiones"[31].

En vista de lo anterior, nos resultan inmeritorios los planteamientos esbozados por la parte apelante.

**VI**

Por los fundamentos que anteceden, se confirma el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[28] Véase determinación de hecho núm. 41.
[29] Véase determinación de hecho núm. 42.
[30] Véase determinación de hecho núm. 43.
[31] *Ortiz Ortiz v. Medtronic*, supra, págs. 773-774, citando a *Jusino et als. v. Walgreens*, supra.